UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CHARLES OJIH OJI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:19-CV-00394-AKK** |
| **NORTHROP GRUMMAN** ) | |
| **SYSTEMS CORPORATION,** ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

Charles Ojih Oji alleges that his former employer, Northrop Grummon Systems Corporation, violated Section 1981 of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, by discharging him. Doc. 1 at 5-10. Oji claims Northrop unlawfully discharged him (1) because he is a Black citizen of Nigeria and (2) in retaliation for a racial discrimination complaint he made. *Id.* Oji also asserts a claim for discriminatory pay in violation of Section 1981. *Id.* at 11. Northrop has filed a motion for summary judgment, doc. 36, which is fully briefed and ripe for consideration, docs. 37; 38; 45; 46; 48; & 49. After reading the briefs, viewing the evidence, and considering the relevant law, the court finds that Oji has failed to rebut Northrop's contentions that it discharged him due to his inability to perform the

computer programming duties of the position and that it paid him a wage within the range of persons in the position. Accordingly, the motion is due to be granted.

**I.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal quotations omitted). A "dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*,

477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.

Oji graduated from the Massachusetts Institute of Technology with his master's in electrical engineering and computer science in 1999. Docs. 38-1 at 135; 46-1 at 2. Despite holding a graduate degree from MIT, Oji has not gained much experience in his field unfortunately. Doc. 38-1 at 20, 136. In particular, he worked as an associate programmer for a little under one year after he graduated, took almost a year break, and then held another programming position for about a year. *Id.* at 136. During that second position, he was on paid leave of absence for much of that year and unable to gain experience. *Id.* at 20. For the next four years, Oji worked a total of four months in small contract positions within his field. *Id.* at 136. From

2007 until 2016, Oji was not employed in his field aside from an unsuccessful attempt to start a business. Doc. 38-1 at 8, 17, 135-136. And, immediately before joining Northrop, Oji served in a volunteer capacity from 2016 to 2017 as an IT systems administrator for a non-profit. Doc. 38-1 at 8, 135.

Northrop hired Oji in June of 2017 for a Software Engineer II position and offered him a salary of $76,000, docs. 46-1 at 4; 38-19 at 3, which Oji accepted without negotiation, doc. 38-19 at 3. Oji lasted only three months before he was discharged. Doc. 46-1 at 2. During his employment, Oji worked on a team with a team leader and two coworkers. Doc. 38-20 at 3. Less than a month after Oji started work, issues related to his alleged incompetency surfaced. Specifically, one of his coworkers reported to the team leader that Oji "lack[ed] fundamental understanding in basic computer networking." Doc. 46-11 at 3. A few weeks later, Oji's functional manager informed Oji that he was not adequately performing his job. Doc. 46-11 at 4. And, a second coworker also relayed concern about Oji's inability to do his job soon after that. Doc. 46-11 at 5.

During this time period, Oji faced the following alleged incidents of racial harassment and discrimination: (1) a video of Neil Degrasse Tyson played in the lab every day as a test tool which Oji says was mocking Black people,[1] docs. 46-1 at 3;

---

[1] Oji elaborated further on this contention: "Other racial harassment . . . included the unnecessary constant playing of the Neil Degrasse videos was also intended to ridicule Blacks, as if a Black scientist (or a Nigerian scientist) today is very rare." Doc. 46-1 at 10.

4

38-12 at 8; (2) his team leader advised him to avoid a certain branch of the DMV located in a predominantly Black neighborhood because it was a "zoo," doc. 46-1 at 10; (3) his coworkers told him he smelled "too good" for a person who was Black and of Nigerian origin, *id.*; and (4) Oji believes he received too much work that was too difficult with too little training, *id.* at 5-7. Oji reported this conduct in August of 2017, *see id.* at 12, but an employee relations investigator found no evidence to support Oji's allegations of racial harassment and hostile work environment. Doc. 38-11 at 10.

Around the same time that Oji reported the alleged discrimination and harassment, Oji's functional manager decided to discharge him. Doc. 38-17 at 5. Based on the manager's own observations and the reports of Oji's team, the manager "concluded that Oji was not capable of performing the duties" of his job. *Id.* The "Termination of Employment" letter based the decision on Oji's "ongoing Performance issues and not being able to meet [his] deliverables in a timely manner . . . ." Doc. 46-11 at 9. Oji challenged the termination internally and then with the Equal Employment Opportunity Commission. Doc. 46-4 at 2. This lawsuit followed. Doc. 1.

### III.

Oji challenges his discharge and his pay. In particular, Oji claims Northrop (1) discharged him due to his race, color, and national origin in violation of both

Title VII and Section 1981, doc. 1 at 5-6, 8-9; (2) discharged him in retaliation for complaining about racial harassment and a hostile work environment in violation of Title VII and Section 1981, *id.* at 7; and (3) paid him less than his non-Black counterparts in violation of Section 1981, *id.* at 11-12. Northrop challenges these claims on multiple grounds, including arguing incorrectly that the Title VII claim is time-barred.[2]

The court will evaluate the Title VII and Section 1981 claims simultaneously as the elements of these claims are the same.[3] Further, all of Oji's claims are governed by the burden-shifting analysis created in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802 (1973), and *Texas Department of*

---

[2] "The timely filing of an EEOC complaint is a prerequisite to a Title VII suit." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 695 (5th Cir. 1982). The "charge must be filed within 180 days of the date of the act giving rise to the charge." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448(11th Cir. 1993); 42 U.S.C. § 2000e-5(e). Oji was discharged on August 22, 2017, *see* doc. 46-11 at 9, so his EEOC charge was due by February 18, 2018. On January 29, 2018, the EEOC received a letter from Oji entitled "a charge of discrimination." Doc. 46-4 at 2. "[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Oji's January 29, 2018 letter met this requirement. Doc. 46-4 at 2-5. As such, the EEOC received Oji's charge within the statute of limitations period. Moreover, while Oji failed to verify his initial letter, *see* doc. 46-4 at 5, he cured this defect by later submitting Form 5 which he verified under penalty of perjury, *see id.* at 8. Under the law, if a claimant submits an unverified charge, they can cure such defect by filing a verified charge that will relate back to the date the of the filing of the defective charge. *See* 29 C.F.R. § 1601.12(b); *Edelman*, 535 U.S. at 118. Put simply, Oji's charge was timely, properly verified, and met the substantive requirements.

[3] *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (applying Title VII legal analysis to Section 1981 discriminatory discharge and retaliation claims); *Lee v. Mid-State Land & Timber Co., Inc.,* 285 F. App'x 601, 605-606 (11th Cir. 2007)(evaluating Section 1981 wage discrimination claim under Title VII framework).

*Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981), with the only differences between the claims being the *prima facie* elements. Under the *McDonnell Douglas* framework, the plaintiff must establish a *prima facie* case of discrimination, retaliation, or unequal pay. *McDonnell Douglas Corp.,* 411 U.S. at 802. Then, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employer's" action. *Id.* Once the defendant does so, the plaintiff must show that the reason was pretext for the real discriminatory or retaliatory reason. *Id.* at 804-805. As explained below, Oji's claims fail either because he cannot make a *prima facie* case or establish that Northrop's reasons for the challenged decisions are pretextual.

**A.**

In Counts I, II, III, and IV, Oji challenges his discharge. Specifically, Oji claims that Northrop discharged him based on his race, color or national origin, *see* doc. 1 at 5-6, 8-9, and in retaliation for reporting discriminatory harassment, *see id.* at 7-10. Assuming, without deciding, that Oji can establish a *prima facie* case of discrimination and retaliation under Title VII and Section 1981, the burden shifts to Northrop to "articulate a legitimate, non-retaliatory [and non-discriminatory] reason for the challenged employment action . . . ." *Rose v. Wal-Mart Stores East, Inc.*, 631 F. App'x 796, 799 (11th Cir. 2015) (per curiam). Here, Northrop has satisfied this burden through its contention that "Mr. Oji was incapable of adequately performing

the job duties for which he had been hired." Doc. 37 at 20. Indeed, based on the record, every witness who worked with Oji reported that Oji was incapable of performing the programming duties of his job. Docs. 46-11 at 3-6; 38-16 at 3; 38-18 at 4-5; 38-20 at 4-5; 38-17 at 4-5. Incompetence is a "legitimate, nondiscriminatory reason[] to terminate" an employee. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996). Therefore, this articulated reason is sufficient to meet Northrop's burden. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

Consequently, the burden shifts back to Oji. "To show pretext, [Oji] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (internal quotations omitted). In an attempt to meet his burden, Oji asserts that: (1) he never received a written review; (2) his manager never met with his team leader to review his job performance goals; (3) his manager did not tell him about his co-worker's negative feedback; and (4) his manager did not follow the company's performance improvement plan. Doc. 45 at 26 (citing doc. 38-13 at 19, 25). These contentions only show that Oji's manager handled his supervisory role differently than Oji would prefer or in a manner contrary to purported best personnel practices. They do not make Northrop's proffered reason "unworthy of credence."

8

*Alvarez*, 610 F.3d at 1265. And although Oji disagrees with his supervisor and coworker's assessments, "[t]he question is whether h[is] employers were dissatisfied with h[im] for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [Oji] as cover for discriminating [or retaliating] against h[im] . . . ." *Id.* at 1266. Moreover, courts "must be careful not to allow Title VII [and Section 1981] plaintiffs simply to litigate whether they are, in fact, good employees." *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)). Finally, while Oji may have preferred more coaching or warning before his discharge, this court "do[es] not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory [or retaliatory] motive." *Id.* at 1266. Based on this record, Oji has failed to show the requisite retaliatory or discriminatory motive.

Oji also describes the negative feedback provided by his co-workers as "minor." Doc. 45 at 26. To the extent Oji is arguing he performed adequately, Oji's abilities are not relevant to this inquiry. The only relevant question is whether the manager reasonably perceived Oji to be underperforming. *Alvarez*, 610 F.3d at 1266. As the Circuit aptly put it, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists

outside of the decision maker's head." *Id.* Oji's manager testified that he believed Oji could not adequately perform his job, *see* doc. 38-17 at 5, and provided reasons for this belief, *id.* at 3-5. And, Oji has not presented any evidence to call this testimony into question.

To close, Oji has failed to rebut the articulated reason for his termination. Therefore, even if he can make a *prima facie* case, his discriminatory and retaliatory discharge claims fail.

## B.

In Count V, Oji pleads a claim for wage discrimination based on his contention that Northrop paid him less than two purportedly similarly-situated individuals. To establish a *prima facie* claim for wage discrimination, Oji must show: "(1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside of the protected class received higher compensation; and (4) he was qualified to receive the higher wage." *Hill v. Emory Univ.*, 346 F. App'x 390, 395 (11th Cir. 2009); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981); *Lee v. Mid-State Land & Timber Co., Inc.*, 285 F. App'x 601, 605-606 (11th Cir. 2007). As shown below, Oji has failed to prove the third and fourth prongs, and even if he could, he has not shown Northrop's non-discriminatory reason for the pay difference is pretextual.

1.

To satisfy the third prong, Oji must show that he and his "proffered comparators were 'similarly situated in all material respects.'" *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019). Northrop hired Oji's first proposed comparator, Rowe, for the same Software Engineer II position with a salary of $80,500 after Oji's discharge. Doc. 38-19 at 5. Northrop contends that it offered this amount because Rowe had a competing job offer and negotiated for a higher starting salary. Doc. 38-19 at 4-5. Oji has presented no evidence to challenge this contention. And, there is no evidence that Oji had a competing offer with another company that warranted similar treatment as Rowe. Moreover, unlike Rowe, Oji accepted the offer with no negotiation. *Id.* at 3. Therefore, Oji is not similarly situated to Rowe. *See, e.g., Hill*, 346 F. App'x at 395 (finding individuals were not similarly situated when they had competing job offers and the plaintiff did not).

Nor is Oji similarly situated to his second comparator, Lee. Northrop promoted Lee to the Software Engineer II position with an initial starting salary of $77,397 in 2015. Doc. 46-16 at 2. Lee worked in another position within the company for three years before his promotion. Doc. 49-1 at 2-3. Lee's initial Software Engineer II salary reflected an increase of $5,145 from his prior salary based on his strong performance in the year before. Doc. 49-1 at 3. Unlike Lee, Oji had no history with Northrop and a history of underemployment when Northrop

hired him. Docs. 46-1 at 4; 38-19 at 3; 38-1 at 7-8, 17, 19, 135-136. Accordingly, Oji's *prima facie* case fails at the third prong.

2.

The *prima facie* case also fails at the fourth prong which requires Oji to show that "he was qualified to receive the higher wage." *Hill*, 346 F. App'x at 395. Initial salaries are based on many factors, including the candidate's work experience. The record is undisputed that Oji had a history of underemployment and lacked relevant experience when Northrop hired him. Having a master's degree, even from MIT, does not overcome this minimal work history and falls short of establishing that Oji was qualified to receive a higher wage. Therefore, for this additional reason, the *prima facie* case fails.

3.

Alternatively, even if Oji could establish a *prima facie* case for wage discrimination, his claim would still fail as Oji has not shown that Northrop's nondiscriminatory reason for the wage difference was pretextual. Northrop explained that it offered Oji a salary within "the range of annual compensation for Software Engineers 2 employed by Northrop in Huntsville." Doc. 38-19 at 3. Further, it based the amount on Oji's previous offer for $80,000 for a position with Northrop in California. Oji declined that position because he wanted a software engineering position. *Id.* at 2. Northrop adjusted the Huntsville offer based on the

cost-of-labor difference between the two locations. *Id.* at 3. The only rebuttal Oji has presented to contest this reason is an allegation that a graduate from MIT is generally paid much more money. Doc. 45 at 31. That "MIT graduates with masters degree[s] tend to earn over $100,000 at places like Northrop," doc. 45 at 31, as Oji claims, is not relevant to the pretext analysis. Based on his work history and lack of relevant experience, Oji may not be the typical MIT graduate. Moreover, the experience of other MIT graduates does not show that Northrop's reason for Oji's salary was false or pretextual. Therefore, in light of his failure to meet his burden, Oji's wage discrimination claim also fails.

## CONCLUSION

Consistent with this opinion, Northrop's Motion for Summary Judgment, doc. 36, is due to be granted. A separate order will be entered.

**DONE** the 18th day of December, 2020.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE